

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN.

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. L. Armstrong
County Auditor
Tom Green County
San Angelo, Texas

Dear Sir:

Opinion No. O-3962
Re: Has the county authority to
pay clerical or stenographic
persons that work with and
assist the county case workers
who are paid by the State
under the new Intake and Cer-
tification Division, as set
out in the general appropria-
tion bill, and related ques-
tions?

Your recent request for an opinion of this depart-
ment on the questions stated herein reads in part as follows:

"The Commissioners Court of Tom Green
County is considering the execution of a
contract with the Texas Department of Public
Welfare. Under which contract the County
will obligate itself to pay clerical and
stenographic help working with the State
junior field workers and to furnish files,
stamps, office supplies, janitor service,
and other items necessary to the operation
of the local Department of Welfare Office.

"In February, 1940, you rendered this
office an opinion, No. O-1972, holding that
the County was not authorized to employ
clerical help for the Texas and Federal agen-
cies, nor was it authorized to furnish office
supplies for such departments. It appears
that the provisions of the proposed contract
with the Department of Public Welfare would

Honorable R. L. Armstrong, page 2

be in direct contravention with this opinion as well as several other opinions rendered by your department, such as Opinions Nos. O-120, O-281, O-638, O-1919, and O-3075.

"The question of the authority of the County to execute the above mentioned contract was raised with Mr. James Taylor, County Coordinator, Department of Public Welfare, who presented the contract to the Court. Mr. Taylor propounded the question to Mr. T. E. Darcy, Supervisor, Correspondence and Complaints, of the Department of Public Welfare, I enclose a copy of Mr. Darcy's opinion to Mr. Taylor on the question, which very fully explains the situtation and indicates that subsequent legislation has authorized the counties to pay clerical help and furnish office supplies to be used in the local Department of Welfare office.

"I have studied the acts referred to by Mr. Darcy in his opinion, and have discussed them with our County Attorney, but we find no provisions directly authorizing the County to pay for the items in question.

"I dislike burdening your department with questions which you have previously answered, but due to the fact that the Department of Public Welfare was created subsequent to your opinion to me February, 1940, and inasmuch as the act creating the department does make certain inferences concerning the County's responsibility, I wish to certify the following questions:

"1. Has the County authority to pay clerical or stenographic persons that work with and assist the County case workers who are paid by the State under the new Intake and Certification Division, as set out in the General Departmental Appropriation Bill?

"2. Has the County authority to furnish office supplies such as files, stamps, janitor

Honorable R. L. Armstrong, page 3

service, etc., necessary to the operation
of the local Departmentof Welfare office?

"I enclose a copy of the proposed con-
tract submitted by the Department of Public
Welfare and in connection therewith,call
your attention specifically to Articles 3
and 5 of such contract, wherein the obliga-
tions of the County are set forth."

Our opinion No. O-1972, referred to in your letter,
has been overruled by our opinions No. O-2217 (conference
opinion No. 3099) and No. O-2474. We enclose copies of
these opinions for your information.

Section 1 of Article 2372e-2 provides:

"Section 1. The County Commissioners
Courts and the City Commission of any incor-
porated town or city of this State are hereby
authorized to lease, rent, or provide office
space for the purpose of aiding and cooperat-
ing with the agencies of theState and Fed-
eral Governments engaged in the administra-
tion of relief to the unemployed or needy
peopleof the State ofTexas, and to pay the
regular monthly utility bills for such offices,
such as lights, gas, and water; and when in
the opinion of a majority of a Commissioners
Court of a county such office space is essen-
tial to the proper administration of such
agencies of either the State or Federal Gov-
ernments, said Court is hereby specifically
authorized to pay for same and for the regu-
lar monthly utility bills for such offices
out of the County's General Fund by warrants
as in the payment of such other obligations
of the County."

Senate Bill 423, Acts of the 47th Legislature,
1941, Regular Session, which is the general appropriation
bill, under the subdivision of "Division of Intake and
Certification", provides as follows:

"Provided that the sums hereby appro-
priated are to supplement the funds being used
by the counties and cities of Texas for the

Honorable R. L. Armstrong, page 4

purpose of making certificates and re-
ferrals to the Works Project Administra-
tion, the National Youth Administration,
the Civil Conservation Corps and the Fed-
eral Surplus Commodity programs.  Provided,
that in the event the sums hereby appro-
priated are insufficient for the State De-
partment to adequately perform the intake
and certification functions of these pro-
grams according to the standards and regu-
lations of the State Department of Public
Welfare, then in that event the State De-
partment of Public Welfare ishereby em-
powered and authorized to withdraw its
funds and services for these programs from
any County or City not contributing month-
ly to the intake and certification func-
tions of these programs in that County
or City in an amount equal to the amount
used for the same functions and expended
by such County or City during the month
of January, 1941:  the amount expended dur-
ing January 1941, includes all amounts
used on a cash, kind, rental, lease, con-
tractual or lend basis.

"Provided that the State Department of
Public Welfare shall apply to the Works
Project Administration for continuing the
necessary projects for the commodity dis-
tribution and supervision of commodity dis-
tribution.  And provided that in the event
the Works Projects Administration continues
to provide funds for these services as it
has done since September 1, 1939, then in
that event, the State Department of Public
Welfare is prohibited from using the funds
provided in Items 89 to 126, inclusive, and
Item 128 of the above appropriations for
these services .  Provided further, that in
that event, the State Department of Public
Welfare may use the funds provided in Items
89 to 126, inclusive, and Item 128, of the
above appropriations for transportation of
surplus and commodities for the free hot
school lunch program and otherwise to the
extent necessary for the efficient and eco-

Honorable R. L. Armstrong, page 5

nomical distribution of surplus commodities
made available to the State Department of
Public Welfare."

House Bill No. 611, Acts of the 47th Legislature,
Regular Session, 1941, which is commonly referred to and
cited as the "Public Welfare Act" charges the State Board
of Public Welfare with the administration of the welfare
activities of the State as mentioned in said Act. Section
40 of this Act specifically provides that "the commissioners'
court of any county may appropriate funds from its general
funds, or any other available fund, for the administration
of such County Child Welfare Boards and provides for services
to and support of children in need of protection and/or care."
This is the only provision of the Act which directly and
expressly authorizes the commissioners' court to make appro-
priation of its funds for any of the purposes mentioned in the
Act.

Subsection 5 of Section 4 of the Public Welfare
Act authorizes the State Departmentof Public Welfare to
assist other departments, agencies and institutions of the
local State and Federal Government, when so requested and
cooperate with such agencies when expedient in performing
services in conformity with the purposes of the act.

Subsection 7 of Section 4, supra, authorizes the
State Department of Public Welfare to establish and provide
such methods of local administration as is deemed advisable,
and provide such personnel as may be found necessary for
carrying out in an economical way the administration of the
Act.

Section 6 of said Act specifically provides
in part:

"The State Department ishereby authorized
and directed to cooperate with the proper depart-
ments of theFederal Government and with all other
departments of the State and local Government in
the enforcement and administration of such pro-
visions of the Federal 'Social Security Act' and
any amendments thereto and the rules and regula-
tions issued thereunder, andin compliance there-
with, in the manner prescribed in this Act or as
otherwise provided by law."

Honorable R. L. Armstrong, page 6

Section 7 of the Act provides in part:

"The State Department is hereby designated as the
State's agency to administer or supervise referrals
and certifications to the Works Projects Administra-
tion, the National Youth Administration and the
Civilian Conservation Corps. The State Department
may cooperate with any City orCouny in any manner
deemed necessary for the proper operation of these
programs."

Section 35 of the Act provides:

"The purpose of this Act, is to inaugurate a
program of social security and to provide necessary
and prompt assistance to the citizens of this
State who are entitled to avail themselves of its
provisions. This Act shall be liberally construed
in order that its purposes may be accomplished
as equitably, economically, and expeditiously as
possible."

Section 39 of the Act provides:

"No provision ofthis Act is intended to re-
lease the counties and municipalities in this State
from the specific responsibility which is currently
borne by those counties and municipalities in sup-
port of public welfare, child welfare, and relief
services. Such funds which may hereafter be appro-
priated by the counties andmunicipalites for
those services may be administered through the county
or district offices of the State Department, and if
so administered, shall be devoted exclusively to the
services in the county or municipality making such
appropriation."

It is well established in this State, by authorities
too numerous to mention, that commissioners' courts are courts
of limited jurisdiction and possess only, such power and author-
ity, as is granted by the Constitution and statutes of this
State, either expressly or by implication.

Does any provision of the Public Welfare Act, above
mentioned, expressly authorize, require, or charge a county
commissioners' court to cooperate with the State Department of

Honorable R. L. Armstrong, page 7

Public Welfare or appropriate its funds for any of the purposes mentioned therein, other than Section 40, supra? We think not. Is such authority conferred by implication by any of said provisions? It is our opinion that such authority is not so conferred. If this is true, then, we must look to other statutes for such authority.

Considering the subdivision of "Division of Intake and Certification," Senate Bill 423, supra, we fail to find any authority either expressed or by implication, authorizing requiring or charging a commissioners' court to cooperate with the State Departmentof Public Welfare or appropriating its funds for any purpose mentioned in the Public Welfare Act or Senate Bill 423, supra. However, it is true that the State Department of Public Welfare is empowered and authorized to withdraw its funds and services for the programs mentioned under the subdivision of "Division of Intake andCertification" from any county or city not contributing monthly to the intake and certification functions of the programs in the county or city in an amount equal to the amount used for the same functions and expended by said county or city during the month of January, 1941.

We fail to find any authority empowering or authorizing a county commissioners' court to appropriate and expend the county funds for any of the purposes mentioned in either of your questions as above stated. Unless, relative to your first question, such expenditures are made "for the purpose of aiding and cooperating with the agencies of the State and Federal Governments engaged in the administration of relief of the unemployed and needy peopleof the State of Texas." (Our opinion No. 0-3099.)

In answer to your second question you will note that the authority extended by Article 2372e-2, supra, is limited to the provisions of office space and the regular monthly utitlity bills for such offices such as mentioned therein, for the purpose of aiding and cooperating with the agencies of the State and Federal Governments engaged in the administration of relief of the unemployed and needy people of the State of Texas and does not authorize the furnishing of such supplies as mentioned in your second question.

Honorable R. L. Armstrong, page 8


Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

RECEIVED NOV 12, 1941

By $

ARDELL WILLIAMS
ASSISTANT

AW:NW

APPROVED OPINION COMMITTEE BY L.W.B. CHAIRMAN